# In the United States Court of Federal Claims

No. 18-607
(Filed: April 1, 2019)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| BP AMERICA PRODUCTION COMPANY,<br><br>                Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>                Defendant. | Displacing Tucker Act; Specific Remedial Scheme; Waiver of Sovereign Immunity; Exhaustion; Federal Oil and Gas Royalty Management Act of 1982; Royalty Simplification and Fairness Act of 1996; 30 U.S.C. § 1721; 30 U.S.C. § 1724; Statute of Limitations; 28 U.S.C. § 2501; RCFC 9(k); Subject-Matter Jurisdiction; RCFC 12(b)(1); Failure to State a Claim; RCFC 12(b)(6). |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Peter J. Schaumberg*, with whom was *James M. Auslander*, Beveridge & Diamond, P.C., Washington, D.C., for Plaintiff.

*Isaac B. Rosenberg*, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman*, *Jr.*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., as well as *Robert C. Eaton*, Senior Attorney, Rocky Mountain Regional Solicitor's Office, U.S. Department of the Interior, Lakewood, Colorado, for Defendant.

OPINION AND ORDER

WHEELER, Judge.

BP America Production Company ("BP") claims that the United States owes it $1,233,574.51 in statutorily mandated interest on oil and gas royalty overpayments for several production months between 2004 and 2008. Until December 4, 2015, the Office of Natural Resources Revenue ("ONRR"), the agency that administers federal oil and gas leases, routinely paid lessees interest on royalty overpayments. On December 4, 2015, the Fixing America's Surface Transportation Act ("FAST Act") stripped ONRR of its power to pay overpayment interest; but, according to BP, the law did not abrogate the United States' obligation to pay whatever interest had accrued on overpayments made before December 4, 2015.

The Government has filed a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim on which relief can be granted arguing that (i) the statutory framework governing oil and gas royalties on federal leases displaces this Court's jurisdiction based on the Tucker Act, (ii) BP failed to exhaust administrative remedies, (iii) BP's claims are untimely, and (iv) in Count II of its Complaint, BP fails to sufficiently allege that the United States breached the terms of its leases.

For the following reasons, the Government's motion to dismiss is DENIED with respect to Count I, and the Government's motion to dismiss is GRANTED with respect to Count II.

Background

I.  Legal Framework Governing Federal Oil and Gas Leases

A series of laws dating from 1920 govern federal oil and gas leases and royalty payments.  Other than the FAST Act, the Federal Oil and Gas Royalty Management Act of 1982 ("FOGRMA") and the Royalty Simplification and Fairness Act of 1996 ("RSFA") enacted the most recent amendments to this legal framework.[1]  These provisions and their implementing regulations govern the royalty reporting, payments, and receipts process.  See 30 U.S.C. §§ 1701-59; Def. Mot. Dismiss at 5-13.  ONRR, an agency within the Department of the Interior, promulgates regulations governing federal oil and gas leases, and administers and collects royalties on those leases.  Compl. ¶ 3, 19.  For simplicity, hereinafter, the Court refers to the entire statutory scheme governing federal oil and gas royalties, as presently codified at 30 U.S.C. §§ 1701-59, as "FOGRMA."

ONRR regulations require lessees to periodically submit Form ONRR-2014s reporting their royalty obligations and to pay ONRR the amounts reported on each form.  30 C.F.R. §§ 1210.52, 1218.41, 1218.51(a), (f).  A Form ONRR-2014 usually covers one production month.  Def. Mot. Dismiss at 8.  If a lessee under- or overpays royalties for a given month, it must adjust its reported royalties by filing an updated Form ONRR-2014.  Minerals Revenue Reporter Handbook, ONRR, Release 3.0 (05/01/2015) at 6-1, *available at* https://www.onrr.gov/reportpay/Handbooks/pdfdocs/MRRH-Chapter-6.pdf (last visited March 28, 2019) ("MRRH").  For under- and overpayments discovered during a compliance audit, lessees submit a Form CMP-2014—which is substantively similar to a Form ONRR-2014—to revise their prior Form ONRR-2014.  See Form CMP-2014, FAQs, https://www.onrr.gov/ReportPay/PDFDocs/Form_CMP2014_Industry_FAQ.pdf   (last visited March 28, 2019).

A Form ONRR-2014, or a Form CMP-2014, that reports overpayments functions as a request for credit from ONRR against prior royalty underpayments or future royalty charges.  Id.; MRRH at 6-7; 30 U.S.C. § 1721a(a)(1).  Before the FAST Act, a Form

---

[1] These laws, including the FAST Act, are codified at 30 U.S.C. §§ 1701-59.

ONRR-2014 or Form CMP-2014 adjusting for overpayments also functioned as a lessee's demand for interest on those overpayments. MRRH at 5-7, 5-8, 5-12. The lessee would calculate and report whatever interest ONRR owed on the overpayments. Id.; 30 U.S.C. § 1721a(a)(2)(A). However, ONRR would calculate the interest owed if a lessee determined that calculating it would impose a "hardship." 30 U.S.C. § 1721a(a)(2)(B). In practice, ONRR assumed that lessees who did not report interest had determined that calculating it would impose a hardship, and ONRR would calculate itself any interest owed. Def. Mot. Dismiss at 10 (citing MRRH at 5-4).

If ONRR determines that a lessee underpaid royalties for a given month, it makes a demand on the lessee for the amount of the underpayment. Def. Mot. Dismiss at 11-12 (citations omitted). If a lessee determines that it overpaid royalties for a given month, it makes a demand on ONRR for the amount of the overpayment, and, prior to the FAST Act, any overpayment interest that had accrued. Id. at 9-10 (citations omitted). Both ONRR and lessees have seven years from when royalties are due to make a "demand" upon the other for an under- or overpayment. 30 U.S.C. § 1724(b). A lessee has six years from the same date to adjust a royalty report to recover an overpayment. 30 U.S.C. § 1721a(a)(4). But the Secretary of the Interior ("Secretary"), or a delegated state, can enter a tolling agreement with the lessee to extend these time periods. 30 U.S.C. §§ 1721a(a)(4), 1724(d).

If ONRR denies a lessee's demand for an overpayment refund or credit (or, pre-FAST Act, an interest refund or credit), FOGRMA permits a series of administrative appeals ending with an appeal to the Secretary. See 30 U.S.C. §§ 1724(h), (j); 30 C.F.R. §§ 1290.105(a), 1290.110(a)(1). If the Secretary upholds the denial, the lessee may seek judicial review of the decision. 30 U.S.C. § 1724(h)(2)(B).

II.     BP's Oil and Gas Leases

BP has more than 200 federal oil and gas leases in the State of New Mexico. Compl. ¶ 2. Under FOGRMA and the terms of its leases, BP pays monthly royalties to the United States on the oil and gas that it extracts. Compl. ¶ 3, 19.

ONRR has the power to audit lessees' royalty payments, and it can delegate its audit power to states. Compl. ¶ 4, 21. ONRR has delegated this power to the State of New Mexico. Id. In 2009, New Mexico conducted an audit ("Audit") of BP's royalty payments made between June 1, 2004, and December 31, 2008 ("Audit Period"). Compl. ¶ 4, 23. In light of the Audit, ONRR and BP entered into tolling agreements that extended the deadline for either to make a demand upon the other for any obligation that accrued during the Audit Period until at least January 31, 2016. Compl. ¶ 24.

According to the Audit, BP overpaid its royalties for six of the months during the Audit Period. Compl. Attach. 1. BP submitted Form CMP-2014s to ONRR reporting that these overpayments totaled $2,994,533.91. Compl. ¶ 28. BP later recouped its overpayment principal. Compl. ¶ 31.

III.     Impact of the FAST Act

On December 4, 2015, then-President Barack Obama signed the FAST Act, Pub. L. No. 114-94. Compl. ¶ 8. Section 32301 of the FAST Act struck 30 U.S.C §§ 1721(h) and (i), and the fourth sentence of Section 1721(j). Pub. L. No. 114-94, Sec. 32301.

Section 32301 reads, in its entirety:

> Section 111 of the Federal Oil and Gas Royalty Management
> Act of 1982 (30 U.S.C. [§] 1721) is amended—
> (1) by striking subsections (h) and (i);
> (2) by redesignating subsections (j) through (l) as subsections (h) through (j), respectively; and
> (3) in subsection (h) (as so redesignated), by striking the fourth sentence.

Former Sections 1721(h) and (j) had empowered and obligated ONRR to pay or credit interest on royalty overpayments. The FAST Act thus eliminated ONRR's source of authority and source of funds for paying or crediting overpayment interest.

On December 8, 2015, ONRR allowed BP to take a credit of $916,539.65 for interest owed on a $2,617,408.97 portion of the total overpayments identified in the Audit. Compl. ¶ 7, 36. BP allocated this interest credit to offset royalty obligations reported on its February 2016 Form ONRR-2014. Compl. ¶ 36, 37.

ONRR later realized that, as of December 4, 2015, it was no longer empowered to pay or credit interest on royalty overpayments, and it asked BP to return the December 8, 2015 credit. Compl. ¶ 9, 38, 39. On May 10, 2016, ONRR distributed a "Dear Payor" letter to lessees notifying them that it could no longer pay or credit overpayment interest and that it would issue invoices to recoup overpayment interest paid or credited after December 4, 2015. Def. Mot. Dismiss at 15 (citing Dear Payor Letter (May 10, 2016), *available at* https://www.onrr.gov/PDFdocs/20160510.pdf (last visited March 28, 2019)).

On July 20, 2016, BP repaid the December 8, 2015 credit. Compl. ¶ 10. BP never challenged ONRR's request that BP return the interest credit. Def. Mot. Dismiss, Ex. A at 2. ONRR never paid or credited BP for the $377,124.94 in interest owed on the rest of BP's overpayments identified in the Audit. Compl. ¶ 41-47.

## Procedural History

On April 27, 2018, BP filed its complaint. Dkt. No. 1. Count I alleged that the United States failed to pay BP interest on royalty overpayments due under former 30 U.S.C. §§ 1721(h) and (j). Compl. ¶ 50. According to BP, the FAST Act stripped ONRR's power to pay interest on royalty overpayments, but did not abrogate the United States' obligation

to pay interest on royalty overpayments made before the FAST Act became law on December 4, 2015.  Compl. ¶ 50-55.

Count II alleges that BP's oil and gas leases incorporate the terms of 30 U.S.C. §§ 1701-59, including former Sections 1721(h) and (j).  Therefore, BP claims, the FAST Act's eliminating ONRR's power to pay interest on royalty overpayments breached BP's leases. Compl. ¶ 56-67.

On August 26, 2018, the Government filed its motion to dismiss.  Dkt. No. 7.  The parties completed briefing on November 9, 2018.  Dkt. No. 14.  The Court heard oral argument on February 22, 2019.

## Analysis

I.     Subject-Matter Jurisdiction

The Government first argues that this Court lacks subject-matter jurisdiction because (1) FOGRMA displaces the Tucker Act as the mechanism for bringing oil and gas royalty-related claims against the federal government, (2) BP failed to exhaust statutorily mandated administrative remedies, and (3) BP's claims are time-barred.

In deciding a motion to dismiss for lack of subject-matter jurisdiction, the Court accepts all uncontroverted factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  Stephens v. United States, 884 F.3d 1151, 1155 (Fed. Cir. 2018) (citation omitted).

For subject-matter jurisdiction in the Court of Federal Claims, a plaintiff (1) must show that its claims fall within the ambit of the Tucker Act and (2) "must identify a separate source of substantive law that creates the right to money damages," i.e., a law that is "money-mandating."  Jan's Helicopter Serv., Inc. v. F.A.A., 525 F.3d 1299, 1306 (Fed. Cir. 2008) (quotation omitted).  The Court will address both requirements in turn.

   A.     Tucker Act Jurisdiction

The Tucker Act authorizes the Court of Federal Claims to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States."  28 U.S.C. § 1491(a)(1).  The Tucker Act does not create substantive rights; it is a jurisdictional provision that waives sovereign immunity for certain claims. United States v. Navajo Nation, 556 U.S. 287, 290 (2009).  It plays a "gap-filling role" and may be called upon when "[n]o special remedy has been provided to enforce a payment to which [a] claimant [is] entitled" from the United States.  United States v. Bormes, 568 U.S. 6, 13 (2012) (quotation omitted).

### 1.     Whether the FOGRMA Remedial Scheme Displaces the Tucker Act

"[S]tatutory schemes with their own remedial framework exclude alternative relief under the general terms of the Tucker Act." Bormes, 568 U.S. at 13 (citing cases). Where a statute is a self-contained "detailed remedial scheme, only its own text can determine" whether the federal government can be liable for damages. Id. at 15. And where a statute "impos[es] monetary liability" on the United States, that "special remedy . . . is exclusive." Id. at 12, 13 (citing United States v. Kaufman, 96 U.S. 567, 569 (1878)).

"To determine whether a statutory [remedial] scheme displaces Tucker Act jurisdiction, a court must examin[e] the purpose of the [statute], the entirety of its text, and the structure of review that it establishes." Alpine PCS, Inc. v. United States, 878 F.3d 1086, 1093 (Fed. Cir. 2018) (quotation omitted) (alterations in original). Courts look to whether the "specific remedial scheme" "enables claimants to pursue . . . the monetary relief contemplated by the statute." Bormes, 568 U.S. at 12, 15 (citation omitted); see also id. (asking whether a remedial scheme allows claimants to "direct[ly] challenge" agency action and provides a "ready avenue to bring . . . claims against" the United States (quotation omitted)).

Examining the text, purpose, and structure of the FOGRMA remedial scheme, the Court concludes that it does not displace Tucker Act jurisdiction with respect to BP's claims.[2] FOGRMA, as modified by the FAST Act, provides no mechanism for BP to get relief on its claims, and therefore, BP's claims are beyond its scope. Further, the FAST Act's repeal of the very provisions that had empowered ONRR to pay overpayment interest also weighs against displacement.

#### a.     BP Cannot Get Relief Through FOGRMA and ONRR.

Without Sections 1721(h) and (j), ONRR has no power to grant BP relief on its claims for interest on royalty overpayments. As a result, the current FOGRMA remedial scheme does not provide BP with a "ready avenue," Alpine PCS, 878 F.3d at 1093, "to pursue . . . monetary relief" from the United States, Bormes, 568 U.S. at 15. If a claimant cannot use a specific remedial scheme to impose monetary liability on the United States for a given claim, then that claim must be outside the scope of the remedial scheme. See, e.g., Telecare Corp. v. Leavitt, 409 F.3d 1345, 1349 (Fed. Cir. 2005) (holding that Medicare's "specialized administrative and judicial review process" did not encompass plaintiff's claim, and so did not displace the Little Tucker Act).

To displace the Tucker Act, a remedial scheme must provide a plaintiff with an "opportunity for full relief" on its claims. For example, in St Bernard Parish Gov't v. United States, the Federal Circuit affirmed displacement of the Tucker Act because

---

[2] It is unnecessary for the Court to take a position on whether the FOGRMA remedial scheme displaced the Tucker Act for claims for overpayment interest before the FAST Act became law, and so the Court declines to do so.

"administrative review procedures, followed by judicial review in a district court, offer[ed] the opportunity for full relief on [plaintiff's] claim." No. 2018-1204, slip op. at 14 (Fed. Cir. 2019). Similarly, in Alpine PCS, Inc. v. United States, the Federal Circuit affirmed displacement where plaintiff's contract claims fell within a provision governing judicial review of FCC agency decisions, and both the FCC, and the D.C. Circuit on review, had the power to grant the plaintiff relief on its claims. 878 F.3d at 1093-94.

Less recent caselaw supports the same conclusion. See, e.g., Hinck v. United States, 550 U.S. 501 (2007) (no displacement because Tax Court empowered to provide a remedy to taxpayer); Marcum LLP v. United States, 753 F.3d 1380 (Fed. Cir. 2014) (no displacement because statute provided a remedy for court-appointed service provider seeking fees); Pines Residential Treatment Ctr., Inc. v. United States, 444 F.3d 1379 (Fed. Cir. 2006) (similar, Medicare reimbursement claim); Tex. Peanut Farmers v. United States, 409 F.3d 1370 (Fed. Cir. 2005) (similar, Federal Crop Insurance Corporation claim).

Not only is ONRR impotent to grant BP relief, but even if BP sought judicial review under the APA of an ONRR decision denying it relief, it would receive no remedy because the district court could not order ONRR to do something it is not empowered to do and could not order the United States to pay damages. See 5 U.S.C. § 706 (reviewing court may set aside unlawful agency action or compel agency action unlawfully withheld); 5 U.S.C. § 702 (providing for "relief other than money damages"); see also Delano Farms Co. v. Cal. Table Grape Comm'n, 655 F.3d 1337, 1347 (Fed. Cir. 2011) (noting that the APA "cannot serve as a 'backdoor' to . . . district court jurisdiction over a monetary claim").

The Government tries to argue that the FOGRMA definitions of "demand" and "obligation" encompass claims for "any interest," including ONRR's December 8, 2015 $916,539.65 credit to BP. Def. Mot Dismiss at 20-21 (citations omitted). Therefore, the Government argues, BP could have challenged ONRR's FAST Act interpretation in the "Dear Payor" letter and ONRR's request to recoup the December 8, 2015 credit. Def. Reply at 3-4. But because the FAST Act barred ONRR from paying interest as of December 4, 2015, the December 8, 2015 credit, and its subsequent recoupment, were not valid agency actions; and even if they were, BP could not get relief on its claims by challenging them. The FAST Act unambiguously revoked ONRR's power to pay interest (see section b., below) and, consequently, ONRR's power to grant BP relief on its claims.

      b.      The FAST Act Unambiguously Removed Claims for Overpayment Interest from FOGRMA.

The FAST Act's repealing the very FOGRMA provisions that had empowered ONRR to pay overpayment interest also weighs against FOGRMA's displacing the Tucker Act here. Assuming that FOGRMA is a specific remedial scheme with respect to principal overpayment claims, Congress's striking ONRR's power to pay interest—without altering

7

its other powers under FOGRMA—is strong evidence that BP's claims are now beyond FOGRMA's scope. Cf. Keene Corp. v. United States, 508 U.S. 200, 208 (1993) ("Where Congress includes particular language in one section but omits it in another," it is "presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation omitted)). So even if FOGRMA had previously displaced the Tucker Act for overpayment interest claims, Section 32301 of the FAST Act shows Congress's intent to carve those claims out of the remedial scheme.

And based on the FAST Act's text, Congress's intent is clear. Section 32301 repealed the only non-definitional provisions of FOGRMA that reference interest on royalty overpayments. Therefore, the Court concludes that Congress's intent is unambiguous, and thus, Section 32301 of the FAST Act is not open to contrary agency interpretation. See FAG Italia S.p.A. v. U.S., 291 F.3d 806, 816 (Fed. Cir. 2002) ("[N]o case . . . holds that an administrative agency has authority to fill gaps in a statute that exist because of the absence of statutory authority.").

The Government can point to no evidence that Congress intended FOGRMA to continue to encompass overpayment interest claims after the FAST Act became law. And, in any case, such evidence would contradict the plain text of Section 32301 and the most reasonable interpretation of FOGRMA's post-FAST Act structure and purpose.

Finally, the Government alludes to the possibility that "ONRR could have lost its 'authority' to pay interest for multiple reasons, including that Congress had revoked *all rights to claim* interest on overpaid royalties." Def. Reply at 11 (emphasis in original). That argument requires the FAST Act to apply retroactively. See Hicks v. Merit Sys. Prot. Bd., 819 F.3d 1318, 1322 (Fed. Cir. 2016) (a law has "retroactive effect" where "it would impair the rights a party possessed when he acted" (quotation omitted)). The Government does not argue retroactivity in its motion and reserves it as a defense. Def. Motion Dismiss at 18 n.8; Def Reply at 11 n.2. Therefore, the Court will not address whether the FAST Act applies retroactively at this time.

In sum, an agency administering a specific remedial scheme must be empowered to grant relief on a claim if that remedial scheme is to displace the Tucker Act with respect to that claim. Where a remedial scheme does not cover certain claims, then the Tucker Act can serve its "gap-filling role," Bormes, 568 U.S. at 13, so long as those claims are based on a money-mandating source of law.

2. Money-Mandating Source of Law

Having established that BP's claims fall within the ambit of the Tucker Act, the Court turns its attention to the second requirement for establishing subject-matter jurisdiction: whether BP's claims are based on a money-mandating source of law.

8

In its brief, the Government stated that it assumed without conceding that former Section 1721's interest provisions were money-mandating. Def. Mot. Dismiss at 18 n.8. However, "[w]hen a complaint is filed alleging a Tucker Act claim . . . , the trial court at the outset shall determine, either in response to a motion by the Government or sua sponte" whether the claim is properly based on a money-mandating source of law. Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005).

A statute is "money-mandating" if it is "reasonably amenable to the reading that it mandates a right of recovery in damages." United States v. White Mountain Apache Tribe, 537 U.S. 465, 473 (2003). Former Section 1721(h) reads "[i]nterest shall be allowed and paid or credited on any overpayment" and "interest shall be paid from amounts received as current receipts" from defined sources. "[T]his type of mandatory language, e.g., 'will pay' or 'shall pay' creates the necessary 'money-mandate,' for Tucker Act purposes." Britell v. United States, 372 F.3d 1370, 1378 (Fed. Cir. 2004) (citation omitted). Therefore, BP's claims are based on a money-mandating source of law.

### B. Statutory Administrative Exhaustion

The Government next argues that BP failed to exhaust administrative remedies available under FOGRMA. See McCarthy v. Madigan, 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required.") (citation omitted). As explained above, BP's claims do not fall within the ambit of FOGRMA. As a result, FOGRMA's exhaustion requirements do not apply.

### C. Statute of Limitations

Claims before the Court of Federal Claims must be brought within six years. 28 U.S.C. § 2501. A cause of action under the Tucker Act accrues "when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." San Carlos Apache Tribe v. United States, 639 F.3d 1346, 1350 (Fed. Cir. 2011) (quotation omitted). Unlike the statute of limitations for making an administrative demand on ONRR, the Tucker Act's statute of limitations is jurisdictional; it cannot be tolled by agreement. First Annapolis Bancorp, Inc., v. United States, 54 Fed. Cl. 529, 540 (2002).

The Government contends that, under former Section 1721(h), BP's claims for interest on royalty overpayments "accrue[d] from the date [the underlying] *overpayment was made*." Def. Mot. Dismiss at 29 (emphasis in original). This is a tortured reading of the first sentence of former Section 1721(h). The full sentence reads:

> Interest shall be allowed and paid or credited on any overpayment, with such interest to accrue from the date such overpayment was made, at a rate equal to the sum of the

>Federal short-term rate determined under section 6621(b) of Title 26 plus 1 percentage point.

30 U.S.C. § 1721(h) (repealed 2015). The sentence plainly lays out a method for calculating interest on royalty overpayments, not a trigger for the statute of limitations on overpayment interest claims. See Hyatt v. U.S. Pat. & Trademark Off., 904 F.3d 1361, 1374 (Fed. Cir. 2018) ("[T]he plain meaning of a statute is conclusive absent special circumstances." (quotation omitted)).

For BP's claims to be timely here, BP must have had a valid, timely claim against ONRR for overpayment interest under Section 1724 and former Sections 1721(h) and (j) up to and including December 4, 2015. If not, then BP's claims would have expired under the pre-FAST Act FOGRMA remedial scheme, ending the United States' obligation to pay without ever implicating this Court's statute of limitations.

Here, BP's tolling agreements with ONRR extended the deadline for BP to make a demand on ONRR for overpayment interest until at least January 31, 2016. Compl. ¶ 24. The Government does not dispute this fact. Def. Reply at 16-18. On December 4, 2015, before BP made a demand and before January 31, 2016, the FAST Act revoked ONRR's authority to make good on this obligation. BP could not have known that ONRR would fail to pay interest on its royalty overpayments until that date. Thus, the FAST Act triggered the Tucker Act's six-year statute of limitations. BP filed its complaint on April 27, 2018, well within this Court's limitations period.

II.   Failure to State a Claim

The Government next argues that BP fails to state a claim because (1) the Court should require BP to exhaust administrative remedies under the prudential exhaustion doctrine, and (2) with respect to Count II, BP fails to allege that the United States breached an obligation arising from its leases.

To survive a motion to dismiss for failure to state a claim on which relief can be granted, a "complaint must allege facts plausibly suggesting (not merely consistent with) a showing of entitlement to relief." Harris v. United States, 868 F.3d 1376, 1379 (Fed. Cir. 2017) (citations omitted). The Court "accept[s] all well-pleaded factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." Id.

A.   Prudential Exhaustion

"Prudential exhaustion is a matter of judicial discretion, in which the court considers the 'twin purposes of protecting administrative agency authority and promoting judicial efficiency.'" Fredericks v. United States, 125 Fed. Cl. 404, 411 (2016) (citation omitted). The court also considers whether forcing a plaintiff to seek an administrative remedy would

10

cause undue prejudice or would be inadequate, such as if an agency is not empowered to grant relief. Id. at 411-12 (citation omitted).

A prudential exhaustion requirement would be inappropriate here. Exhaustion would neither promote judicial efficiency nor protect ONRR's authority because ONRR is not empowered to grant BP relief. And forcing BP to seek an administrative remedy would cause undue prejudice because it would be clearly inadequate.

### B. Breach of Contract

Rule of the Court of Federal Claims ("RCFC") 9(k) dictates that a plaintiff bringing a contract claim "must identify the substantive provisions of the contract" on which its claim relies. The Court "cannot exercise its jurisdiction unless the plaintiff satisfies" RCFC 9(k). Zainulabeddin v. United States, 138 Fed. Cl. 492, 508 (2018) (citing cases). A plaintiff can satisfy RCFC 9(k) if it can show that a statutory provision giving rise to the claim is incorporated into the contract at issue by reference. For this, a plaintiff must show that the contract uses "clear and express language" that "unambiguously communicates that the purpose is to incorporate the referenced material." Precision Pine & Timber, Inc. v. United States, 596 F.3d 817, 826 (Fed. Cir. 2010).

BP does not point to any lease provision that requires the United States to pay interest on its royalty overpayments. Nor does BP identify any provision that unambiguously incorporates former Sections 1721(h) and (j) into its leases by reference. BP merely alleges that the FOGRMA provisions "appl[y] to the royalty reports and payments" and that the "terms of FOGRMA appl[y] to the Leases." Compl. ¶ 59, 61. BP's Complaint fails to satisfy RCFC 9(k), and therefore, the Court must dismiss Count II.

### Conclusion

In conclusion, Defendant's motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim is GRANTED with respect to Count II of the Complaint and DENIED with respect to Count I. Count II is dismissed without prejudice.

The Court orders the parties to file a Joint Status Report within 30 days of the date of this Opinion and Order proposing how they intend to proceed.

IT IS SO ORDERED.

s/ Thomas C. Wheeler  
THOMAS C. WHEELER